IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

UNITED STATES OF AMERICA                                                                PLAINTIFF

v.                                          Case No. 1:09-cr-10014

AUDREY LAVELL TATUM                                                                     DEFENDANT

## ORDER

Before the Court is Defendant Audrey Lavell Tatum's Motion for to Reduce Sentence Pursuant to Section 603 of the First Step Act of 2018 ("FSA"). ECF No. 93. The Government has responded. ECF No. 99. The Court finds the matter ripe for consideration.

## BACKGROUND

On November 4, 2009, Defendant was indicted on two counts of distributing cocaine base. ECF No. 1. A Superseding Indictment later added one count of conspiracy to distribute cocaine base. ECF No. 31. Tatum agreed to plead guilty to Count Two of the superseding indictment, charging him with distributing 50 grams or more of cocaine base. ECF No. 77. The final Pre-Sentence Report ("PSR") determined Defendant was a career offender and calculated a recommended guideline sentencing range of 292-365 months. ECF No. 54, ¶¶ 31, 118. The Court sentenced Defendant to 262 months imprisonment with 10 years of supervised release. ECF No. 55. On May 31, 2019, Defendant filed a motion to reduce his sentence pursuant to section 404 of the FSA. ECF No. 80. The Court granted Defendant's motion in part and reduced his sentence to 188 months imprisonment and 8 years of supervised release. ECF No. 89.

Defendant filed a motion to appoint counsel (ECF No. 89) in order to represent him for a potential motion for compassionate release, which the Court granted. ECF No. 90. Defendant subsequently filed the pending motion through the Federal Public Defender on December 16, 2020,

and he seeks a reduction in sentence to time served. ECF No. 93. Defendant argues that the combination of his health issues and the ongoing Covid-19 pandemic create extraordinary and compelling circumstances that justify his release under the FSA. Specifically, he contends that his hypertension and asthma put him at greater risk of adverse health impacts if he contracts Covid-19 and that his confinement makes contraction more likely. Defendant also argues that the required sentencing and public safety considerations favor his release. Defendant contends that the pandemic creates a harsher sentence than initially anticipated when he was sentenced. Defendant also highlights his work as an orderly and efforts towards getting his GED during his confinement and notes that he has generally displayed good behavior while imprisoned. Defendant cites this as evidence that his sentence has achieved its rehabilitation and deterrence purposes. Defendant notes that his current conviction is for a non-violent offense and that he did not possess a firearm while committing the offense. Defendant further notes that his inmate program review shows he is not a danger to the community and states that he will have stability upon release because he will live with his fiancé and is likely eligible for disability payments.

The Government responded in opposition to Defendant's motion on January 13, 2021. ECF No. 99. The Government initially contends that the circumstances of Defendant's confinement are not extraordinary and compelling to justify release. Specifically, the Government argues that Defendant has already contracted and recovered from Covid-19 and that his first infection was asymptomatic. The Government contends that this asymptomatic first infection and the low probability of reinfection indicates the risk to Defendant is not as severe as he puts forth in his motion for release. The Government also notes the multitude of precautions the Bureau of Prisons ("BOP") has taken to mitigate the spread of Covid-19 within its facilities.[1] The

---

[1] These measures include, but are not limited to, increased screening of inmates and staff, suspension of social visits, operational modification to emphasize social distancing, and establishing quarantine areas. ECF No. 99, p. 13-15.

Government also argues that the necessary sentencing and safety considerations weigh against Defendant's release. For the public safety considerations, the Government points to Defendant's status as a career offender for multiple drug distribution convictions. The Government contends that this indicates a high risk of recidivism on the part of Defendant. The Government also notes that Defendant has had some behavioral and contraband infractions during his current and prior terms of incarceration. As for the sentencing considerations, the Government argues that allowing Defendant out when he has served less than seventy-five percent of his already reduced sentence would significantly undermine the deterrence effects of his sentence and the need for his sentence to reflect the serious nature of his crimes.

## DISCUSSION

Relief is available under the FSA if the Court finds: (1) that the requested sentence reduction is warranted due to "extraordinary and compelling reasons;" (2) that the sentencing factors set forth in 18 U.S.C. § 3553(a) support a reduction "to the extent that they are applicable;" and (3) that a reduction would be consistent with any applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). Before an analysis of those factors can begin, the Court must determine if Defendant has exhausted all administrative remedies available. 18 U.S.C. § 3582(c)(1)(A).

### A. Exhaustion of Administrative Remedies

The FSA provides two avenues for a defendant to bring a compassionate release motion to a district court. The defendant may either file a motion once he "has fully exhausted all administrative rights to appeal a failure of the [Bureau of Prisons] to bring the motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A).

Defendant bears the burden of showing that she exhausted her administrative rights with the BOP before filing a compassionate-release motion. *United States v. Davis*, No. 2:15-CR-20067-SHM, 2019 WL 6898676, at *1 (W.D. Tenn. Dec. 18, 2019).

The BOP has outlined the administrative exhaustion process in its Program Statement No. 5050.50. In short, a request for compassionate release must first be submitted to the warden of the BOP facility in which the defendant is housed in. 28 C.F.R. § 571.61(a). If the warden approves the request, it is sent to the BOP's general counsel for approval. 28 C.F.R. § 571.62(A)(1). If the general counsel approves the request, it is sent to the BOP's director for a final decision. 28 C.F.R. § 571.62(A)(2). If the director approves, he or she will ask the United States Attorney in the applicable judicial district to file a compassionate-release motion on BOP's behalf. 28 C.F.R. § 571.62(A)(3).

If the warden does not respond to the request, the defendant's administrative remedies are deemed exhausted after thirty days. 18 U.S.C. § 3582(c)(1)(A)(i). If the warden denies the compassionate-release request, the defendant must appeal the decision pursuant to the BOP's Administrative Remedy Program. 28 C.F.R. § 571.63(a). If the request is denied by the BOP's general counsel or director, that decision is considered a final administrative decision and the defendant's administrative remedies are exhausted at that time. 28 C.F.R. § 571.63(b-c).

In this case, Defendant sent his request for release to the warden of his facility, who subsequently denied the request on June 3, 2020. ECF No. 93-1, p. 1. On August 20, 2020, he appealed the warden's decision to the BOP regional director (ECF No. 93-1, p. 2.), but this appeal was rejected. ECF No. 100-2, p.2. The Government states that it believes Defendant has exhausted his administrative remedies and that this Court has jurisdiction to evaluate Defendant's pending

motion. ECF No. 99, p. 4-5. Accordingly, the Court finds that Defendant has taken the necessary steps to exhaust his administrative remedies and will review his motion on the merits.

### B. Extraordinary and Compelling Reasons

The Court finds that Defendant has failed to show that there are extraordinary and compelling reasons justifying a reduction in his sentence and a release from confinement.

Pursuant to the FSA, the Court can grant Defendant's request for a sentence reduction "if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the [United States] Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A)(i). Congress has not defined what constitutes "extraordinary and compelling" reasons, although it did note that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t). Instead, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. *Id.* Thus, the Court looks to the Sentencing Commission's policy statement in the United States Sentencing Guidelines ("USSG") as a starting point in determining what constitutes "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i). *See id.*

The relevant policy statement contemplates a reduction in the term of imprisonment if "extraordinary and compelling reasons warrant the reduction." USSG § 1B1.13(1)(A).[2] This

---

[2] This policy statement predates the FSA and the Sentencing Commission has not since updated it or adopted a new policy statement. This creates an issue because parts of the pre-FSA policy statement do not square neatly with the language of the FSA. *See* U.S.S.G. § 1B1.13 (authorizing compassionate release only on the BOP's motion). Thus, it is unclear whether extraordinary and compelling reasons may be found only from the specific examples listed in the pre-FSA policy statement or if courts can look beyond those examples. Courts have answered that question with mixed results. *See United States v. Brown*, 411 F. Supp. 3d 446, 449-50 (S.D. Iowa 2019) (highlighting the debate regarding the outdated policy statement). However, at minimum, the pre-FSA policy statement provides guidance as to what constitutes extraordinary and compelling reasons. *See U.S. v. Schmitt*, 2020 WL 96904, at *3 (stating that various courts agree that even though the policy statement has not been updated, it nevertheless provides helpful guidance).

policy statement limits "extraordinary and compelling reasons" to only include the following four circumstances:

> (A) Medical Condition of the Defendant. –
>
>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (ii) The defendant is –
>>
>>> (I) suffering from a serious physical or medical condition,
>>>
>>> (II) suffering from a serious functional or cognitive impairment, or
>>>
>>> (III) experiencing deteriorating physical or mental health because of the aging process,
>>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of Defendant. – The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances. –
>
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>
>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

Defendant argues that his health issues, specifically hypertension and asthma, combined with the Covid-19 pandemic create "extraordinary and compelling" circumstances justifying his release under either U.S.S.G. §§ 1B1.13, cmt. n.1(A)(ii) or n.1(D). ECF No. 93, p. 10. The Court is not persuaded. As to § 1B1.13, cmt. n.1(A)(ii), the Court does not find that Defendant's health

issues alone are serious enough to be considered extraordinary and compelling circumstances. These health conditions are currently managed with prescription medication and do not present a serious risk to Defendant on their own. ECF No. 100-3, p. 4-5. For the § 1B1.13, cmt. n.1(D) catch-all provision, Defendant's health issues are certainly risk factors that give an individual an elevated risk of serious adverse outcomes from contracting Covid-19. However, Defendant has already contracted Covid-19, which was asymptomatic and resulted in a full recovery. Combined with the low risk of reinfection, this significantly undermines the severity of the dangers the pandemic presents to Defendant. The various measures taken by BOP to mitigate the spread of Covid-19 also undermines the apparent risk of Defendant contracting Covid-19 a second time. Accordingly, the Court does not find that the circumstances are extraordinary and compelling under § 1B1.13, cmt. n.1(D) and do not warrant release under § 3582(c)(1)(A)(i).

### C. § 3553(a) Sentencing Factors

Even if the Court found Defendant had presented an extraordinary and compelling reason for compassionate release, it would still deny such release upon its evaluation of the factors under 18 U.S.C. § 3553(a). That statute provides:

> (a) Factors To Be Considered in Imposing a Sentence. — The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> > (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> >
> > (2) the need for the sentence imposed—
> >
> > > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > >
> > > (B) to afford adequate deterrence to criminal conduct;
> > >
> > > (C) to protect the public from further crimes of the defendant; and

>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission];
>
> (5) any pertinent policy statement [issued by the Sentencing Commission];
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Defendant argues that the pandemic creating a harsher sentence than initially anticipated, his time already served, and his efforts toward rehabilitation support his release pursuant to the § 3553(a) sentencing factors. The Court is not persuaded. Regarding the pandemic creating a harsher sentence, the Court determined above that the circumstances related to Defendant's medical issues and potential reinfection with Covid-19 are not as severe as Defendant contends. As to the time Defendant has already served, it is less than seventy-five percent of his total sentence. This significantly undermines Defendant's argument that his sentence has achieved its deterrence purpose under § 3553(a)(2)(B). Defendant qualified as a career offender for his latest drug distribution conviction, and his sentence, already reduced once in 2019, was meant to reflect his history and the serious nature of his crime. Releasing Defendant at this time would undermine both § 3553(a)(1)'s requirement that a sentence consider Defendant's history and § 3553(a)(2)(A)'s requirement that the sentence reflect the seriousness of the offense. The Court notes Defendant's efforts at obtaining his GED and his productive work as an orderly during his confinement. However, those efforts do not outweigh the concerns that arise from analyzing his

motion pursuant to § 3553(a)'s considerations. Accordingly, the Court finds that an evaluation of the § 3553(a) sentencing factors does not support Defendant's request for release.

### D. Safety Considerations Under 18 U.S.C. § 3142(g)

The Court also finds that the necessary consideration of public safety prevents the Court from granting Defendant's request for release.

The requirement under 18 U.S.C. § 3582(c)(1)(A) that any reduction be consistent with any applicable policy statements issued by the Sentencing Commission necessitates an evaluation of the 18 U.S.C. § 3142(g) safety factors. *See* USSG § 1B1.13(2). The factors for consideration under § 3142(g) are:

> (g) Factors to be considered.-The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning-
>
> > (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> >
> > (2) the weight of the evidence against the person;
> >
> > (3) the history and characteristics of the person, including—
> >
> > > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > >
> > > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> >
> > (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government,

> conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

Defendant argues that his release would not pose a risk to the public because of the non-violent nature of his offense, his good conduct during his incarceration, and his anticipated stability upon release. The Court is not persuaded. While Defendant's current conviction was for a non-violent offense and did not involve possession of a firearm, it was his third conviction for drug distribution and he qualified as a career offender for sentencing. ECF No. 54, ¶ 31. This significantly undermines Defendant's request in light of § 3142(g)(3)(A)'s required consideration of Defendant's criminal history and indicates there is a higher risk of recidivism. Also, § 3142(g)(3)(A)'s required consideration of past conduct means the Court must take note of Defendant's transgressions while incarcerated. Defendant has violated rules against contraband during his current confinement (ECF No. 100-1, p. 5) and he committed a multitude of disciplinary violations, including assault and battery, during his confinement for prior convictions in the Arkansas Department of Corrections. ECF No. 54, ¶ 65. This propensity for violating rules raises concerns of recidivism and weighs against an early release. The Court takes note of Defendant's educational efforts during his confinement and the stable living situation he anticipates upon release through housing with his fiancé and potential disability benefits. However, those positives are not enough to outweigh the concerns raised when analyzing Defendant's motion under 18 U.S.C. § 3142(g)'s community safety considerations. Accordingly, Defendant's motion must fail.

**CONCLUSION**

For the reasons stated above, the Court finds that Defendant's motion (ECF No. 93) should be and hereby is **DENIED**.

**IT IS SO ORDERED**, this 8th day of April, 2021.

/s/ Susan O. Hickey  
Susan O. Hickey  
Chief United States District Judge